GLADNEY, Judge.
This is an action in tort by William T. Tarver against the insurer of an automobile driven by C. M. Brown to recover damages for personal injuries and property damage allegedly sustained in an automobile collision March 5, 1955, at about 10:20 o’clock P.M., on U. S. Highway No. 84 about three miles north of Trout in LaSalle Parish, Louisiana. Following a trial on the merits judgment was rendered in favor of plaintiff in the sum of $3,744.50, from which judgment defendant has prosecuted an appeal, and plaintiff-appellee has answered the appeal asking that the award be increased to the sum of $5,255.50. It is conceded by counsel for both parties litigant that the case may be determined solely on certain issues of fact.
On the night of March 5, 1955, Mrs. Charlotte Tarver was driving the family car in a northerly direction accompanied by her husband, plaintiff herein, and seated upon his lap was their five year old granddaughter. As Mrs. Tarver was preparing to turn left and go into the driveway leading to her home on the west side of the highway their car was struck on its left rear end by an automobile driven by C. M. Brown, manager of the Gulf States Truck Lines, the insured of defendant. As a result of the collision plaintiff sustained an injury in the region of his neck and shoulders, more commonly referred to as a “whiplash” injury, and the automobile was damaged to the extent of $50.
The liability of the defendant is predicated upon five specifications of negligence attributed to C. M. Brown, the driver of the Oldsmobile. These were: (a) In driving at a fast and reckless rate of speed which plaintiff avers was substantially in excess of 60 miles per hour before the application of his brakes; (b) In failing to keep a proper lookout and observe the hand signal being given by the driver of plaintiff’s car; (c) In failing to reduce the speed of his car and bring it under control when he saw or should have seen plaintiff’s car moving slowly in the road ahead of him; (d) In failing to give warning with his horn of any intention or desire to pass plaintiff’s car; (e) In driving his car into a collision with the rear of plaintiff’s car when several alternative courses were available to him by the exercise of due care. The charges embraced in (a) and (e) have not been supported by evidence and are not seriously pressed upon the appeal. In the written opinion of the district court it is indicated plaintiff did satisfactorily prove the charges particularized in (b), (c) and (d) above.
On the other hand it is defendant’s contention that its insured, Brown, was not guilty of any negligence, but that the accident was caused solely by the action of Mrs. Tarver in turning left in front of a passing automobile without giving timely signal of her intention to make a left hand turn.
As readily conceded by counsel, the resolution of liability rests upon several issues *796 of fact. Certain of the facts are undisputed and it was stipulated by counsel: That while actually the highway in question ran almost exactly northwesterly and southeasterly at the point of this accident, for the purpose of this record the road will be dealt with as running north and south, the direction toward the Town of Tullos being spoken of as north and toward -the Town of Trout being spoken of as south. The Tarver house was situated then on the west side of the road and the house of the witness Berryman on the east side of the road; that the highway was surfaced with concrete, the paved surface being 18 feet wide and the road was level or almost exactly level at the point of the accident and for several hundred yards in each direction; that the road was straight for approximately a mile in each direction from the point of the accident; that there was no public highway intersection near enough to be a factor in the situation. , It was in open country with houses closely located on both sides of the highway, approximately 4 or S residences being on each side of the highway within a distance of 1,000 feet south of the point of collision; that the road was dry and it was not raining, there being no moisture in the atmosphere or on the surface of the road. Visibility was unimpeded considering the fact that it was night.
The only eye witnesses to the accident were the occupants of the two automobiles involved. Both Mr. and Mrs. Tarver testified, as did C. M. Brown. Additional testimony was furnished by S. B. Berryman, Gerald Berryman and Don Steen, a State Trooper.
Mr. Tarver testified that his wife had been driving north along U. S. Highway No. 84 at a rate of speed of 40 to 45 miles per hour, proceeding in the direction of their home; that when about 125 yards to 150 yards south of their driveway his wife began slowing down and at the same time gave a signal for a left turn by extending her arm straight to the left; that their automobile was struck in the rear at a point about 50 feet south of the driveway in front of their home while moving at a slow speed and before his wife began to negotiate a left turn; that after being struck from the rear, his car went forward and came to rest about 100 feet north of the point of impact on the east or right side of the highway. Mrs. Tarver’s testimony is substantially the same as that of her husband. She admitted, however, that she observed in the rear view mirror the automobile driven by Brown when it was approximately 200 yards to the rear.
C. M. Brown testified he was driving north along U. S. Highway No. 84 just prior to the accident preceded by a car which went on to pass the Tarver car and after that car had passed on in front, and while he, Brown, was traveling 40 to 45 miles per hour, he began to speed up and moved out to pass the Tarver car. Then, when he was within some 15 to 30 feet of the latter vehicle, its driver, Mrs. Tarver, gave a left turn signal with her hand extended, and at that time it was too late to drop back, turn to the right, or to pass on the left. Accordingly, he applied his brakes and skidded into the rear of the Tarver automobile.
The inference from Brown’s testimony is the two vehicles collided when his car was entirely in the west traffic lane and consequently Mrs. Tarver was at that time attempting to execute a lefthand turn. However, he admitted to the fact that he was at least 100 feet to the rear of the Tarver car when he applied his brakes and also he conceded he did not see Mrs. Tarver’s hand when it was initially extended as the signal for a lefthand turn.
Gerald Berryman and his father, S. B. Berryman, were seated in the living room of the latter’s home and upon hearing the sound of the collision they rushed to the scene of the accident. Both testified they observed tire marks on the pavement which commenced about 125 feet from the point of impact and extended only 6 or 7 feet before fading out. The marks were wholly within the west traffic lane and apparently were made by the Brown automobile. These witnesses testified further that they found bits of broken glass, a piece of chrome and some dirt near the center of *797 the paved slab, but the greater part of this-debris was located within the east traffic lane. It was thus indicated that the point of impact was where these objects were found and that the glass and chrome came from a shattered lens from the right front parking light of the Oldsmobile. Gerald Berryman fixed the locus of the collision as being 50 or 60 feet to the south of the Tarver driveway. The record reveals also that several months after the accident S. B. Berryman and Don Steen, a State Trooper, while engaged in inspecting the scene found the tire marks still present.
Counsel for appellant earnestly argues S. B. Berryman’s testimony was contradictory to a signed statement given by him to Harry Sneed, an investigator of the defendant, in which statement Berryman said the skid marks in the east lane “went straight on west until they curved off the west side of the road” and “about midway of the length of the skid marks he saw some broken glass and kicked it off the highway.” The contention thus made would place Brown’s automobile entirely west of the center line just before and after contact with the Tarver vehicle. But even if it be conceded that counsel’s point is well taken, the testimony of Gerald Berryman and of Mr. and Mrs. Tarver preponderates to establish that the Tarver car had not departed from the east lane nor had it commenced its act of making a left turn when the collision occurred.
Commenting upon the testimony and facts presented, the judge a quo aptly observed:
“The physical facts support the testimony of the witnesses, William T. Tarver and Mrs. Tarver, that the plaintiff’s car was in its proper or right lane of traffic when struck from the rear by the car being operated by Mr. Brown. And further, that the Tarver car was moving straight ahead at the time of the impact. The contention borne out by the testimony of Mr. Brown that the car driven by Mrs. Tarver was crossing in the left lane at an angle of 45 degrees or even less is untenable. With this version as to the impact it seems reasonable that the Tarver car would have been crushed more along the left side of tlje vehicle and had both cars been moving in that direction it follows that they would most probably both have continued on in a left direction after the impact. The facts reveal that the Tarver car continued on in a northerly direction and veered off to the right and that the Brown car abruptly turned to the left.”
The district judge made the following specific findings of fact before assessing responsibility for the accident upon the driver of the automobile insured by defendant: That plaintiff’s car was moving at a speed of approximately 10 to 12 miles per hour at the time it was struck; that it was struck from behind by the approaching Oldsmobile on the left portion of the rear, involving approximately one and one-half foot space; that Mrs. Tarver gave a proper signal indicating her intention to make a left turn; that the passing automobile driven by Brown gave no audible signal of his intention to pass; that the Oldsmobile was in the lefthand lane or west lane approximately 125 feet from the point of impact; that after the impact the Tarver car traveled northward, angling to the right and the car driven by Mr. Brown moved to the left abruptly and came to rest on the left side of the road; that broken glass, a piece of chrome, and some dirt were found in the center of the road at the point of impact and other debris extended from the center of the road to the left following the path of the Oldsmobile.
After a careful examination of the record we are of the conviction that the testimony entirely supports the judgment which found that Brown was negligent in failing to keep a proper lookout except for which failure he would have sooner observed the signal given by Mrs. Tarver and exercised more careful control over the vehicle driven by him.
We concur, therefore, in the conclusion of the trial judge as to the negligence of Brown being the sole and proximate cause of the accident. It is earnestly contended that Mrs. Tarver was contributorily negli *798 gent in untimely turning her vehicle into the left or west lane of the highway. This contention falls because of our finding that Mrs. Tarver had not commenced her turning maneuver at the time of the impact.
The evidence discloses that at the moment of the collision the seat occupied by Mr. Tarver was broken loose and threw him backward and from that time he suffered pain in his neck. He was treated by Dr. Guy Campbell at the Jena Clinic and thereafter he went to the United States Veterans’ Administration Hospital for further treatment. Subsequently he was examined by Drs. A. Scott Hamilton, orthopedist of Monroe, Louisiana, and James Q. Graves, general practitioner of Monroe, Louisiana. A careful reading of the testimony and evidence relating to the injury leads to the conclusion that plaintiff suffered a sprain of the neck muscles and apparently sustained some injury to the nerves in that region. After the accident Mr. Tarver has been unable to rotate his head from side to side without experiencing pain. Dr. Graves attributed this to a disturbance of the brachial plexus nerve. This pain was also associated with numbness in his arms extending down to the fingers, causing a tingling sensation and weakness of the arms and hands. Dr. Hamilton concluded that Mr. Tarver’s complaints are in a large measure justified by the physical and radiographic findings which he concluded to be as follows:
“I feel that Mr. Tarver’s complaints are in a large measure justified by the physical and radiographic findings. I think that it will require several months before spontaneous healing takes place. The exact length of time is difficult to determine but it can be assumed that it will be longer than it would in a younger and more virile person. Mr. Tar-ver’s age and general poor physical status, as well as his hypersthenic habitus, militate against any rapid recovery.”
After giving every consideration to the appeal made by plaintiff to have the award of damages increased, we are of the opinion that the conclusion reached by the trial judge should be affirmed and that the allowance as made in the judgment from which appealed is supported by satisfactory evidence, and is neither excessive nor inadequate.
It is our opinion that the judgment from which appealed should be affirmed.